IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SALVADOR ACEVES | § § § | |
| *Plaintiff,* | § § | |
| | § | C.A. NO. |
| v. | § § | |
| | § § | JURY TRIAL DEMANDED |
| CITY OF DEER PARK, | § § | |
| *Defendant.* | § § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiff Salvador Aceves (referred to as "Plaintiff") complaining of the CITY OF DEERPARK (referred to as "Defendant") for interfering with his rights under the Family Medical Leave Act ("FMLA"), violating 42 U.S.C. § 1981, violating Title VII of the Civil Rights Act of 1964 and for violating Plaintiff Aceves' procedural due process rights under the Fourteenth Amendment to the United States Constitution. In support thereof, he would respectfully show the Court as follows:

### I.
### PARTIES

1. Plaintiff Salvador Aceves is an individual who resides in the State of Texas.

2. Defendant City of Deer Park ("City"), is a municipal corporation within the State of Texas. The City has the power to sue and be sued under 42 U.S.C. § 1983. The City may be served with process via Rule 4 of the Federal Rules of Civil Procedure by

serving Wayne Riddle, Mayor, City of Deer Park, 710 East San Augustine, Deer Park, Texas 77536.

## II.
### JURISDICTION AND VENUE

3. The Court has jurisdiction over the lawsuit because the actions arise under the Family Medical Leave Act, ("FMLA"), 29 U.S.C. §§ 2601-2654, 42 U.S.C. § 1981, Title VII, 42 U.S.C. § 2000e-(a), and 42 USC § 1983 under the Fourteenth Amendment (procedural due process). Plaintiff was employed as the Executive Chef for the City of Deer Park's country club, Battle Ground Golf Club doing business within the territorial jurisdiction of the Court.

4. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this claim occurred in this district.

## III.
### CONDITIONS PRECEDENT

5. All conditions precedent have been performed or have occurred.

## IV.
### FACTS

6. Plaintiff Salvador Aceves is a male of Mexican American decent; he was employed with the City of Deer Park for nearly five (5) years as an Executive Chef for the Deer Park Battleground Golf Course, from on or about 2006 until his termination on August 20, 2012.

7. Aceves' supervisor Kim Woodruff (former Golf Business Operations Supervisor) encouraged Aceves to get involved in some of the area charity events for publicity. Thereafter, Aceves volunteered with his supervisor and appeared in a picture in his chef uniform with his supervisor at an event. Aceves never profited from any outside events.

8. After Aceves' supervisor Woodruff retired from the City of Deer Park, Mr. Scott Lightfoot (Caucasian male) was hired as the new Golf Business Operations Supervisor to replace Ms. Woodruff. Upon meeting Mr. Aceves, Mr. Lightfoot learned of Mr. Aceves' national origin and color.

9. Mr. Lightfoot immediately began exhibiting disdain for Mr. Aceves. He did not agree with Mr. Aceves' salary; he often stated that Mr. Aceves' salary was too high. Within days of beginning his new position as Golf Business Operations Supervisor, Mr. Lightfoot held a meeting and instructed Mr. Aceves' kitchen staff to come to him regarding any problems or issues, in lieu of Mr. Aceves.

10. Additionally, Mr. Scott Swigert, Director of Parks & Recreation has referred to Mr. Aceves as stupid, a liar, and a thief.

11. Mr. Aceves has complained about Mr. Swigert and Mr. Scott Lightfoot on more than one occasion.

12. Additionally, Mr. Aceves complained about how two Hispanic females were sexually harassed by a Caucasian male employee (Michael (last name unknown)). His complaints and opposition to the sexual harassment were rewarded in the form of retaliation.

13. Afterwards, Mr. Aceves and another Hispanic employee were required to clock in even though both were salaried employees and no other salaried employees were required to clock in.

14. In dealing with Mr. Lightfoot's, Mr. Aceves became extremely stressed and such stress affected his health. Mr. Aceves had no other alternative than to take leave under the Family Medical Leave Act. His leave began on July 24, 2012. When Mr. Aceves returned on or around August 15, 2012, he was suspended for two days. On August 16, 2012, Mr. Aceves sought medical attention and subsequently informed his supervisor that his doctor had required that he take additional FMLA leave. Mr. Lightfoot was very upset when he found out about Mr. Aceves' leave. In response, on August 20, 2012, Mr. Aceves was terminated via telephone.

15. After learning of Mr. Aceves' subsequent hospitalization on August 16, 2012, Defendant sent a termination letter on August 21, 2012, informing Mr. Aceves that he had been terminated effective August 15, 2012.

16. Within the termination letter, Mr. Aceves was given fourteen (14) days after the date of discharge to appeal the employment action to the City Secretary. Unfortunately, because Defendant backdated the termination date to August 15, 2012, Defendant gave Mr. Aceves less days to appeal his discharge.

17. Further, without ever receiving a written handbook with pertinent contact information such as the City Secretary's information, Mr. Aceves attempted to appeal his discharge to those with higher authority, including the City Manager. His appeal was not considered.

4

18. Mr. Aceves was replaced by a Caucasian male.

## V.
## VIOLATION OF THE FMLA

19. Plaintiff is an eligible employee within the meaning of the FMLA. He was employed by Defendant for at least twelve (12) months and for at least one thousand two hundred and fifty (1,250) hours of service during the previous twelve (12) month period. 29 U.S.C. § 2611(2).

20. Defendant is considered an employer within the meaning of the FMLA. Defendants are engaged in commerce or in an industry or activity affecting commerce and employs fifty (50) or more employees for each working day during each of twenty (20) or more calendar workweeks in the current or preceding calendar year. 29 U.S.C. § 2611(4).

21. Plaintiff was entitled to twelve (12) workweeks of leave during the twelve (12) month period immediately preceding his termination.

22. Plaintiff gave Defendant such notice as was practicable. Upon learning of Mr. Aceves' extended medical leave, Mr. Aceves was terminated four (4) days later.

23. Defendant intentionally interfered with rights provided under the FMLA by discharging Plaintiff Aceves while he was on FMLA leave. Defendant discharged Plaintiff for taking FMLA leave. Violation of the City of Deer Park Personnel Manual as alleged as a legitimate reason for termination of the Plaintiff, was a mere pretext.

24. In the alternative, filing for and taking leave under the FMLA was a motivating factor to the Plaintiff's terminations.

## VI.
### RACE DISCRIMINATION AND RETALIATION UNDER 42 U.S.C. § 1981

25.     Each and every allegation contained in the foregoing paragraphs is realleged as if fully rewritten herein.

26.     Defendant's intentional race discrimination against Plaintiff Aceves and pattern and practice of this are in violation of the Reconstruction Civil Rights Acts, 42 U.S.C. § 1981.  Defendant's retaliation against Plaintiff and pattern and practice of this are in violation of the Reconstruction Civil Rights Acts, 42 U.S.C. § 1981 as well.  Such discrimination and retaliation has caused Plaintiff to suffer the damages of severe emotional distress, lower wages and retirement benefits, and lower raises and other benefits associated with a promotion to a higher position.

27.     Such discrimination and retaliation were committed with malice and reckless indifference to the rights of Plaintiff and other racial minorities to "have the same right…to make and enforce contracts… as is enjoyed by other citizens" and to the intent of the statute to protect victims from unequal treatment.

28.     Aceves' salary was considered too high by Defendant.  He along with another Hispanic employee, were required to clock in, while non-Hispanic employees were not required to clock in.

29.     Mr. Aceves opposed the sexual harassment of two female Hispanic employees and reported his opposition to Defendant.  Further, Mr. Aceves also complained about the racial discrimination he endured and was terminated days later.

## VII.
### NATIONAL ORIGIN DISCRIMINATION AND COLOR DISCRIMINATION UNDER TITLE VII OF THE CIVIL RIGHTS ACT AND CHAPTER 21 OF THE TEXAS LABOR CODE

30. Plaintiff's national origin is Mexican, a protected group that the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000, *et. seq.*, the Civil Rights Act of 1991, and Chapter 21 of the Texas Labor Code were all intended to protect.

31. As such, Plaintiff is a member of an ethnic group which is, and is commonly perceived as being, ethnically and physiognomically distinct; his skin tone is of a darker pigmentation.

32. At all relevant times, Plaintiff was qualified for the position he held as Executive Chef during his employment with Defendant.

33. Alternatively, Defendant terminated Plaintiff because of his national origin and color.

34. Defendant subjected Plaintiff to different terms, conditions and privileges of employment because of his color and national origin, in violation of Title VII of the Civil Rights Act and Chapter 21 of the Texas Labor Code which were intended to protect individuals, and for which Plaintiff now seeks compensatory and punitive damages.

35. By the above-described acts, Defendant discriminated against Plaintiff because of his color and national origin by tolerating and failing to take affirmative action to correct these unlawful employment practices and by discriminating against Plaintiff with respect to the terms, conditions and privileges of his employment because of his national origin.

36. Further, Defendant acted with malice or, in the alternative, with reckless indifference to the federally protected rights of Plaintiff.

37. As a result of Defendant's discriminatory actions, Plaintiff has suffered loss of wages, both in the past and in the future, as well as emotional pain, mental anguish, suffering, inconvenience, and loss of enjoyment of life in the past which, in all probability, will continue to be suffered into the future.

38. Specifically, Mr. Aceves is of Mexican descent. He thrived in his position as Executive Chef until the arrival of Mr. Lightfoot.

39. Defendant's alleged non-discriminatory reason, violation of the City of Deer Park Personnel Manual was a mere pretext. Mr. Aceves was replaced by a Caucasian employee.

40. In the alternative, even if Plaintiff may have violated the City of Deer Park Personnel Manual, discrimination based upon his race and national origin was a motivating factor to his termination.

## VIII.
### HOSTILE WORK ENVIRONMENT UNDER TITLE VII OF THE CIVIL RIGHTS ACT

41. Plaintiff repeats and re-allege paragraphs 1 through 40 with the same force and effect as though fully set forth herein.

42. The Plaintiff was subjected to a hostile work environment based upon his color and national origin. He belongs to a protected class Mexican American, he was subject to unwelcome harassment, the harassment was based upon his membership the protected classes, the harassment affected a term, condition or privilege of his

employment and City of Deer Park knew or should have known of the harassment and failed to take prompt remedial action.

43. The harassment affected a term, condition, or privilege of the Plaintiff's employment, in that it was sufficiently severe or pervasive to create a work environment that is both subjectively and objectively abusive, i.e., one that Plaintiffs perceived as abusive and one that a reasonable person would find hostile or abusive.

## IX.
### VIOLATION OF 42 U.S.C. § 1983 AND PLAINTIFF'S RIGHT TO DUE PROCESS AS GUARANTEED BY THE UNITED STATES AGAINST DEFENDANT CITY OF DEER PARK

44. Plaintiff re-alleges and incorporates by reference all of the facts set forth in the above sections of this Complaint.

45. Scott Lightfoot and Scott Swigert were both involved in the termination of Mr. Aceves and they had influence over the Director of Human Resources, Bill Philibert.

46. The Human Resources Department is one of several departments within the City of Deer Park government. In his capacity as Director of Human Resources, Bill Philibert, is a City "department head" and "appointing authority". As such, Philibert is the highest level policy maker and decision-maker within the Human Resources Department.

47. Bill Philibert, Director of Human Resources terminated Plaintiff without due process in violation of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983. This claim is predicated on procedural due process. This claim arises directly under the United States Constitution and 42 U.S.C. § 1983.

9

48. Defendant gave partial information regarding Mr. Aceves' notice of his right to appeal. For instance, they provided the name of the individual to appeal to, but they failed to provide him the individual's contact information and they provided the wrong date of his termination i.e. he had less days to appeal.

49. Plaintiff Aceves timely filed his August 20, 2012 termination pursuant to the termination letter he received. Thereafter, Mr. Aceves' appeal was never addressed by Defendant. As of the date of the filing of this lawsuit, Defendant has wholly failed to recognize that Plaintiff appealed his termination.

50. Prior to his termination and following his termination despite filing an appeal/grievance, Plaintiff was not afforded an opportunity to be heard to contest his discipline. Additionally, Plaintiff was not (i) afforded a hearing before an impartial tribunal in which to contest his discipline; (ii) provided any opportunity to confront and cross-examine his accusers and witnesses against him; (iii) provided any opportunity to present evidence on his own behalf; (iv) provided any identification or specification of any charges against him, including evidence; (v) provided any written findings of fact based on substantial evidence relating to contest his discipline; (vi) provided any specific grounds for his discipline; or (vii) provided any written statement setting forth the specific acts or omissions that are the reason for his discipline.

51. Defendant City of Deer Park has made a deliberate choice to follow a course of action to deny Plaintiff Aceves his due process rights. Defendant's confusing letters and delay in providing proper information certainly facilitated Defendant's custom

of denying due process. This custom thwarted his appeal process. Those with decision making authority adopted and followed this custom.

52. Following these actions, there were no reprimands, no discharges, and no admission of error on the part of the Defendant.

53. Since August of 2012, there have been no changes made to Defendant's policies or customs. If these actions obtained so little attention and action by the City of Deer Park, the jury should be entitled to conclude that it was accepted as the way things are done and have been done in the City of Deer Park—a custom.

## X.
### DAMAGES

54. As a direct and proximate result of Defendant's conduct, Plaintiff Salvador Aceves suffered the following injuries and damages:

   a. Plaintiff was discharged from employment with Defendant. Although Plaintiff has diligently sought other employment, he has been unable to find a job. In addition, Plaintiff has incurred expenses in seeking other employment.

   b. Plaintiff has lost employment benefits, specifically the cancellation of his health benefits plan and payment for medical treatment that otherwise would have been covered by the health benefits plan.

   c. Plaintiff suffered damage to his pension or retirement benefits.

   d. Plaintiff seeks compensation for all lost wages and benefits, plus prejudgment interest at the prevailing rate.

   e. Plaintiff is entitled to postjudgment interest on all sums, including attorneys' fees and costs, awarded in this action.

   f. Defendant's conduct was an intentional and willful violation of the FMLA. Plaintiff is entitled to an award of liquidated damages within the meaning of the FMLA. 29 U.S.C. § 2617(a)(1)(A)(iii).

    g. Defendant's conduct was an intentional and willful violation of 42 U.S.C. § 1981. Plaintiff is entitled to an award of punitive damages under 42 U.S.C. § 1981.

    h. Defendant's conduct was an intentional and willful violation of Title VII and therefore, Plaintiff is entitled to an award of punitive damages.

## XI.
### ATTORNEYS' FEES

55. Plaintiff was forced to engage counsel to protect his rights. Plaintiff is entitled to an award of attorneys' fees and costs under the FMLA, 42 U.S.C. § 1981, Title VII of the Civil Rights Act and under 42 USC § 1983 for Procedural Due Process. 29 U.S.C. § 2617(a)(3), 42 U.S.C. § 1981, and 42 U.S.C. § 2000e-2(a).

## XII.
### JURY REQUEST

56. Plaintiffs request a trial by jury.

## XIII.
### PRAYER

57. For these reasons, Plaintiff asks for judgment against Defendant for the following:

    a. wages, salary, employment benefits, and other compensation denied and/or lost by Plaintiffs as a result of Defendants' violation of the FMLA and/or 42 U.S.C. § 1981 and/or Title VII of the Civil Rights Act;

    b. prejudgment interest at the prevailing rate;

    c. postjudgment interest at the prevailing rate;

    d. liquidated damages as provided for in 29 U.S.C. § 2617(a)(1)(A)(iii);

    e. equitable relief, including reinstatement;

    f. mental anguish;

g. reasonable attorneys' fees;

h. costs of suit; and

i. all other relief the court deems appropriate.

Respectfully submitted,

**MOORE & ASSOCIATES**

By: /s/ Melissa Moore
    Melissa Moore
    State Bar No. 24013189
    Federal Id. No. 25122
    Rochelle Owens
    State Bar No. 24048704
    Federal Id. No. 590507
    Lyric Center
    440 Louisiana Street, Suite 675
    Houston, Texas 77002
    Telephone: (713) 222-6775
    Facsimile: (713) 222-6739

**ATTORNEYS FOR PLAINTIFF**